IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 04-cv-00219-EWN-BNB

ANTHONY HENDERSON,
Plaintiff,

v.

ECHOSTAR COMMUNICATIONS CORPORATION,
CYNTHIA ROBBINS,
THERESA HOWELL,
ELLEN BRUNSWICK, and
MEGAN PRATER,

Defendants.

_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

This matter is before me on the **Motion for Summary Judgment** (the "Motion") filed on January 20, 2005, by defendant EchoStar Communications Corporation ("EchoStar").[1] For the following reasons, I respectfully RECOMMEND that the Motion be GRANTED.

**I.  STANDARD OF REVIEW**

As a preliminary matter, I must liberally construe the pleadings of a *pro se* plaintiff. Haines v. Kerner, 104 U.S. 519, 520-21 (1972).  Nevertheless, I cannot act as advocate for a *pro*

---

[1]The Motion for Summary Judgment is brought solely on behalf of defendant EchoStar. It appears from the record that the individual defendants have not been served.  By separate order, the plaintiff has been ordered to show cause why these defendants should not be dismissed.

*se* litigant, who must comply with the fundamental requirements of the Federal Rules of Civil Procedure.  Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).

In ruling on a motion for summary judgment, the facts must be viewed in the light most favorable to the party opposing the motion and that party must be afforded the benefit of all reasonable inferences to be drawn from the evidence. Adickes v. S. H. Kress & Co., 398 U.S. 144, 157 (1970). Rule 56(c), Fed. R. Civ. P., provides that summary judgment may be rendered if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of demonstrating by reference to portions of pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, the absence of genuine issues of material fact. Celotex Corp. v. Catrett, 447 U.S. 317, 323 (1986). The party opposing the motion is then required to go beyond the pleadings and by affidavits, depositions, answers to interrogatories and admissions on file, to designate specific facts showing that there is a genuine issue for trial. Id. at 324.

## II.  UNDISPUTED MATERIAL FACTS [2]

On January 17, 2000, the plaintiff was interviewed for employment with defendant EchoStar.  *Complaint*, p, 3, ¶ 11.  At the time of the interview, the plaintiff advised EchoStar that he had a nerve tremor and coordination issues involving his right hand.  *Motion*, Exhibit A, p. 14, l. 21 - p. 15, l. 17.  The plaintiff did not pass the typing test.  Id. at p. 12, ll. 1-3.  The only accommodation the plaintiff requested during the application process was that he be allowed to retake the typing test.  Id. at p. 13, ll. 4-25.  The plaintiff retook the typing test without assistance and passed.  Id. at p. 15, ll. 18-25.

The plaintiff was hired as a customer service representative on January 17, 2000. *Complaint*, p, 3, ¶ 11; *Motion*, Exhibit A, p. 12, ll. 14-16 and Exhibit B.  From that date until November 2001, the plaintiff worked in an outbound customer service position.  *Motion*, Exhibit A, p. 28, l. 24 - p. 31, l. 3.  He first worked in the "confirmations" department, then pursuant to his own request, he transferred to a position in the "win-back" department.  Id. at p. 29, l. 7 - p. 30, l. 8.  The plaintiff did not request that EchoStar provide him with any accommodations when

---

[2]In his response to the Motion for Summary Judgment, the plaintiff attempts to dispute the facts as stated by the defendants.  *Objection to Defendant's Motion for Summary Judgment* (the "Response"), filed February 16, 2005.  However, the Response does not "go beyond the pleadings and by affidavits, depositions, answers to interrogatories and admissions on file, . . . designate specific facts showing that there is a genuine issue for trial."  Therefore, the Response does not create any material fact disputes.  I am aware that a complaint can be treated as an affidavit where it contains factual statements based on personal knowledge and has been sworn under penalty of perjury.  Mosier v. Maynard, 937 F.2d 1521, 1524 (10th Cir. 1991).  However, the plaintiff's Complaint is not verified.  Therefore, the Complaint fails to create any material fact disputes.

he worked in the outbound customer service position. Id. at p. 33, ll. 8-13. The plaintiff did not have any significant performance issues during this time. Id. at p. 32, l. 12 - p. 33, l. 13. He was not denied any requested time off during this period. Id. at p. 33, ll. 14-20.

The plaintiff transferred to a customer service support position in November 2001. Id. at p. 30, l. 25 - p. 31, l. 6. From November 2001 through the plaintiff's termination, the only time EchoStar denied plaintiff time off was when he requested it to attend a course in school or to attend training to be an insurance sales person. Id. at p. 42, l. 11 - p. 43, l. 15.

The plaintiff's productivity was low in the customer service support position. Id. at p. 34, ll. 13-16. The plaintiff admits that his productivity never rose above 43%. Id. at p. 46, ll. 5-15. From November 2001 until December 2001, the plaintiff asked that the standards of productivity be lowered. Id. at p. 35, ll. 7-23. On June 25, 2002, the plaintiff submitted a written request stating that he could not maintain the productivity standard due to his medical condition, and requesting that his productivity standard be lowered.[3] Id. Exhibit C. The plaintiff did not ask for any other assistance or changes to the job because he thought that lowered productivity was a reasonable accommodation. Id. at Exhibit A, p. 37, ll. 20-24.

At EchoStar's request, the plaintiff provided documentation of his medical condition in June of 2002. Id. at p. 40, l. 1 - p. 41, l. 3; Exhibit D. The documentation consisted of a

---

[3] Although the written request states that he cannot maintain the average productivity of 70%, the plaintiff understood in June 2002 that EchoStar's productivity standard was 90%. Id. at p. 36, ll. 13-15.

neurological evaluation of the plaintiff written by Dr. Peter S. Quintero on January 4, 1995. Id. at Exhibit D. The evaluation states that the plaintiff was hit by a car in 1988 and incurred a closed head injury. Id. at first consecutive page. As to the plaintiff's condition at the time of the evaluation, Dr. Quintero states:

> This patient's neurological examination is normal except for the
> tremor involving primarily the right hand. He appears to be
> functioning normally from an intellectual and cognitive standpoint.
> I therefore feel the main limitations this patient has regarding
> training for future employment would be that caused by the tremor
> in his right hand. I do not think he should be trained or work in a
> job that requires fine coordination of the right hand. Although the
> patient is able to type he is not able to write.

Id. at third consecutive page. The Quintero evaluation is the only medical documentation that the plaintiff provided to EchoStar. Id. at Exhibit A, p. 40.

The plaintiff's only perceived disability during his employment with EchoStar was the tremor and lack of coordination in his right hand. Id. at p. 38, l. 16 - p. 39, l. 8. During his employment with EchoStar, the plaintiff did not believe that he had a mental disability in addition to the disability involving his right hand. Id. at p. 38, l. 22 - p. 39, l. 22; p. 45, ll. 9-22. Therefore, he never communicated to EchoStar any concerns about a mental disability. Id. at p. 39, ll. 12-15.

The plaintiff's claims are based on EchoStar's refusal to place him back in a customer service representative position. Id. at p. 53, ll. 11-19; p. 54, ll. 11-19. The first time the plaintiff asked to be placed back into a customer service representative position was on August 5, 2002, the day he was terminated. Id. at p. 54, l. 20 - p. 55, l. 17; Exhibit B. The plaintiff admits that he could not have transferred to a customer service representative position at that time because of his poor attendance, which was due solely to absences attributed to insurance sales training. Id. at Exhibit A, p. 53, l. 11 - p. 54, l. 9. The plaintiff admits that EchoStar did not retaliate against

8

him. Id. at p. 55, l. 18 - p. 56, l. 5.

The plaintiff filed his Complaint on February 5, 2004. The Complaint asserts four claims for relief. Claim One alleges discrimination in violation of the Americans With Disabilities Act ("ADA"). Claim Two alleges that the defendants retaliated against the plaintiff in violation of the ADA. Claim Three alleges that the defendants engaged in unlawful employment practices in violation of the Family and Medical Leave Act ("FMLA"). Claim Four alleges that the defendants retaliated against the plaintiff for exercising his rights under the FMLA.

### III. ANALYSIS

#### A. Claim One

Claim One alleges that, in violation of the ADA, the defendants refused to reasonably accommodate the plaintiff's disability and terminated his employment because of his disability. EchoStar asserts that the plaintiff has failed to establish a prima facie case of discrimination under the ADA.

Title I of the ADA provides that "[n]o covered entity shall discriminate against a qualified individual because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). The Tenth Circuit Court of Appeals has clearly articulated the plaintiff's burden in establishing a discrimination claim under the ADA:

> ADA cases without direct evidence of discrimination generally are evaluated under the burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The McDonnell Douglas analysis is particularly appropriate where, as in this case, the employer disclaims reliance on the plaintiff's disability for an employment decision.
>
> * * *
>
> Under McDonnell Douglas, the plaintiff bears the initial burden of establishing a prima facie case by a preponderance of the evidence. Once the plaintiff has established a prima facie case, a rebuttable presumption of unlawful discrimination arises. The defendant then bears the burden of producing a legitimate, nondiscriminatory reason for the adverse employment decision. If the defendant is able to articulate a valid reason, the plaintiff has the opportunity to prove that the defendant's stated reason was in fact pretext. At all times, the plaintiff bears the ultimate burden of proving discrimination.
>
> * * *
>
> To establish a prima facie case of discrimination under the ADA, Plaintiff must demonstrate (1) that he is disabled within the meaning of the ADA, (2) that he is qualified--with or without reasonable accommodation; and (3) that he was discriminated against because of his disability.

Butler v. City of Prairie Village, Kansas, 172 F.3d 736, 747-48 (10th Cir. 1999) (internal quotations, citations, and footnotes omitted).

Under the ADA, a "disability" is defined as:

> (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
>
> (B) a record of such an impairment; or
>
> (C) being regarded as having such an impairment.

42 U.S.C. § 12102(2).

The plaintiff has not provided any evidence to establish that he was disabled at the time of his employment with EchoStar (from January 17, 2000, to August 5, 2002); that he was qualified for the job with or without a reasonable accommodation; or that he was discriminated against because of a disability. The record reflects only that the plaintiff provided EchoStar with documentation that, in 1995, a physician found the plaintiff should not work in a job that required fine coordination of the right hand, and that although the plaintiff was able to type he was not able to write. The plaintiff argues that he is disabled under the ADA because he has "reading problems, coordination problems, memory problems, problems with analytical problem-solving, and cognitive problems." *Response*, p. 1. However, there is no evidence in the record that the plaintiff had these problems during his employment with EchoStar or that EchoStar was ever made aware that the plaintiff had these problems. To the contrary, the plaintiff admits that he never communicated to EchoStar any concerns about a mental disability. *Motion*, p. 38, l. 22 - p. 39, l. 22; p. 45, ll. 9-22.

The plaintiff has failed to establish a prima facie case of discrimination under the ADA. I respectfully RECOMMEND that EchoStar's Motion be GRANTED insofar as it seeks summary judgment in its favor on Claim One.

### B.  Claims Two and Four

Claims Two and Four allege that the defendants retaliated against the plaintiff in violation

of the ADA and the FMLA, respectively. However, when asked to explain his retaliation claims, the plaintiff testified:

> Retaliation. I didn't think it was retaliation. I thought it was they just decided just to fire me based on my inability to stay with the CSS department. I didn't think there was any retaliation at all.

*Motion*, Exhibit A, p. 55, l. 18 - p. 56, l. 5. The plaintiff does not address his retaliation claims in his Response to the Motion. Based on the record before me, I find that the plaintiff has abandoned his retaliation claims. I respectfully RECOMMEND that the EchoStar's Motion be GRANTED with respect to Claims Two and Four.

### C. Claim Three

Claim Three alleges that the defendants engaged in unlawful employment practices in violation of FMLA. FMLA provides that employers must allow employees up to twelve weeks of leave in a year if the leave is requested for one of the purposes specified in the statute, including an employee's "serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). FMLA defines a serious health condition as "an illness, injury, impairment, or physical or mental condition that involves (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." 29 U.S.C. § 2611(11). To establish a prima facie case under FMLA, a plaintiff must show that he was entitled to FMLA leave; that he was denied his substantive rights under FMLA; and he must demonstrate a causal connection between

the two. Dry v. Boeing Co., 92 Fed.Appx. 675, 677, 2004 WL 309323, at *3 (10th Cir. Feb. 19, 2004).

The plaintiff does not provide any evidence to establish a prima facie case under FMLA. To the contrary, the plaintiff admits that from the time he was hired as a customer service representative on January 17, 2000, until he transferred to customer service support in November 2001, he was not denied any requested time off. *Motion*, p. 33, ll. 14-20. The plaintiff further admits that from November 2001 through the plaintiff's termination, the only time EchoStar denied plaintiff time off was when he requested it to attend a course in school and to attend training to be an insurance sales person. Id. at p. 42, l. 11 - p. 43, l. 15. EchoStar never denied the plaintiff time off work for a medical reason. Id. at p. 43, ll. 9-15.

I respectfully RECOMMEND that the Motion be GRANTED to the extent it seeks summary judgment in favor of defendant EchoStar on Claim Four.

## IV. CONCLUSION

I respectfully RECOMMEND that the Motion be GRANTED and that summary judgment be entered in favor of EchoStar and against the plaintiff on all claims.

FURTHER, IT IS ORDERED that pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have 10 days after service of this recommendation to serve and file specific, written objections. A party's failure to serve and file specific, written objections waives *de novo* review of the recommendation by the district judge, Fed. R. Civ. P. 72(b); Thomas v.

Arn, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. In re Key Energy Resources Inc., 230 F.3d 1197, 1199-1200 (10th Cir. 2000). A party's objections to this recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review. United States v. One Parcel of Real Property, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated August 23, 2005.

BY THE COURT:

/s/ Boyd N. Boland
United States Magistrate Judge